

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Weaver H. Baker, Chairman
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. O-4422
Re: Authority of the Board of
Control regarding the sub-
ject appropriation items
under the facts set forth.

You have requested the opinion of this department
upon the matter described in your letter as follows:

"The 47th Legislature appropriated for
'Main roof covering' and 'Dome covering' for
the State Capitol Building the sum of $58,817.00
and $42,219.00 respectively. (Acts 47th Legis-
lature, Regular Session, Page 1148).

"Pursuant to the purposes of this appropria-
tion the State Board of Control caused to be made
plans and specifications, advertised for bids,
and on March 3rd., 1942, said bids were opened
and all found to be far in excess of the funds
appropriated for the purposes under prevailing
conditions.

"In view of the need for certain repairs to
the main roof covering and the dome covering to
eliminate leakage and deterioration and obviate
the hazards to life, it was concluded by the
State Board of Control, upon the recommendation
of our engineer, W. E. Simpson, and architects,
Page & Page, to have plans and specifications
drawn for the construction of a portion of the
job only, as contemplated by the Legislature, and
our consulting engineer was instructed to cause
revised plans and specifications to be submitted
that do not in fact provide for either a main

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

roof covering or a Capitol dome covering, but do in fact provide for other much needed repairs to eliminate the hazards above set out. After due advertisement, bids were received on March 18, 1942 at the office of the State Board of Control as outlined in our Inter-Office communication of that date attached hereto and made a part hereof. Our engineer and architects recommend the acceptance of the bid of Moore Construction Company for the reasons set out in said communication.

". . . .

"Under the facts above stated and in connection with the plans and specifications herewith submitted, does the State Board of Control of Texas have the legal right to award a contract for such construction, which contract in fact does not provide either the main roof covering or Capitol dome covering when complete, but does in fact obviate hazards to human life and prevent deterioration and leakage in said Capitol Building?"

In response to our request for additional information you have provided us with the following analysis and "break-down:"

"The following is in answer to questions submitted by the Attorney General concerning the appropriations for 'Main Roof Covering - Item No. 1 - $58,817.00'; 'Dome Covering - Item No. 8 - $42,-219.00':

"ACCORDING TO APPROPRIATIONS    ACCORDING TO PRESENT
                                           BIDS

Main Roof Covering consists of:

1.  Remove present roofing
    and wood joists in roof.

2.  Remove present Skylights   2.  Remove present Sky-
    and fitting new work to         lights and replace
    old.                            with new.

3. New structural steel.

4. New sheathing with fire proof material.

5. New copper roof                    5. New roof venti-
                                          lators

6. New cooper gutter

Main Roof Covering -            Bid Price -
        $58,817.00                      $33,132.00

"At the time the original bids were receiv-
ed it was impossible to secure the copper roofing
as it was a critical material - due to the present
emergency.

"The revised specifications took the above
fact into consideration and the new bids received
on March 18, 1942 covered the following work to
be done under the heading 'Main Roof Covering'!

"No. 2 - Remove present skylights and install
new skylights over the House of Representatives
and the Senate Chamber;

"No. 5 - Installation of roof ventilators in
ridge of main roof.

"All the above items are directly related to
the 'Main Roof Covering' and include permanent
work which can be done at the present to most near-
ly approach the originally contemplated work.

"ACCORDING TO APPROPRIATIONS  ACCORDING TO PRESENT
                                            BIDS

Dome Covering:

1. Remove present covering

2. Scaffolding                  2. Scaffolding

3. Top of lantern               3. Renew windows in
                                    lantern

4. Cornice, columns, de-
   tails and ballustrades

5. Balcony floor

5. New balcony covering

6. Dome covering, mouldings and brackets

6. New windows, mouldings in dome and paintings of steel work on interior of dome.

7. Dome barrell covering

8. Colonade, cornice and mouldings

Dome Covering - $42,219.00          Bid Price - $39,000.00

"At the time the original bids were received it was impossible to secure the zinc, steel, copper, etc., required for this work since it was critical materials - due to the present emergency.

"The revised specifications took the above facts into consideration and the new bids received on March 18, 1942 covered the following work to be done under 'Dome Covering':
"No. 2 - Scaffolding
"No. 3 - Remove present wood windows and frames and replace with new steel windows, frames and louvers;
"No. 5 - As originally contemplated.
"No. 6 - Remove present wood windows and frames in main part of dome and replace with steel windows and frames, also to paint all exposed steel work in interior of dome.

"All the above items are directly related to and are a part of the main dome of the building."

We must decide if the appropriation items "Main Roof Covering" and "Dome Covering" restrict any expenditure solely to actual "coverings" or were intended by the Legislature to include work directly related to the main roof and dome.

You have advised us that the cost of merely "covering" the main roof, on the one hand, and the dome, on the other hand, at the time the estimates were made, was only approximately 20% of the sums named by the Legislature. And that the amounts of these particular items resulted from the findings of a legislative committee charged with the responsibility of

determining what should be done pertaining to the main roof and dome of the Capitol Building.

It is clear that if the subject items were intended to include only "coverings" the amounts appropriated would have been sufficient only for this purpose. The appropriation of a greater sum is definite evidence of a legislative intent that the moneys appropriated were to be expended for other work in connection with the main roof and dome.

The language does not admit of the construction that it was intended to restrict the Board of Control to one of two alternatives only: either to entirely remove and discard the present roof and dome coverings and replace with new, or to do nothing to eliminate existing defects relating thereto.

The brevity of the appropriations must be construed in the light of the fact that by general law the legislature has conferred upon the Board of Control the duty and responsibility of supervising and managing the State Capitol Building.

It is therefore our opinion that these appropriation items were intended by the Legislature to authorize expenditures directly related to the purposes of the appropriations and should not be restricted to expenditures for "coverings" only.

This being true, it is our further opinion that the Board of Control would be authorized to award the contract for the purposes described where it appears, as it does appear from the information you have given us, that the work to be done is directly related to the main roof and dome and will prevent certain damage to the Capitol Building and danger to persons within the building, as a result of defects in the roof and dome, which most certainly the Legislature intended should be accomplished by the appropriations made.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Zollie C. Steakley
Assistant

ZCS:db